O

JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: | Case No. CV 10-09586-VAP |
| | USBC Case No. LA09-12423 BR |
| GREGG FIENE, | ADVERSARY Case No. LA09- |
| DEBTOR | 01486 BR |
| | |
| Selection Chic Look, | **MEMORANDUM OPINION AND ORDER** |
| Inc., et al., | **AFFIRMING THE JUDGMENT OF** |
| | **THE BANKRUPTCY COURT** |
| Plaintiffs-Appellees, | |
| | **[Motion filed on April 29,** |
| v. | **2011]** |
| | |
| Gregg Fiene, | |
| | |
| Defendant-Appellant. | |

Appellant Gregg Fiene and Appellees Danny Forouzesh, Cyrus Forouzesh (collectively, "the Forouzeshes"), and Selection Chic Look, Inc. (hereafter, "Chic" a company over which Cyrus Forouzesh presided) participated in an arbitration over a dispute involving a collapsed business venture, in which the Forouzeshes and Chic were investors and of which Fiene was the president.  The arbitrator

held that Fiene defrauded the Forouzeshes and Chic of
their investment, and awarded them damages.

During the pendency of the arbitration, however,
Fiene filed for bankruptcy protection.  After prevailing
in the arbitration, Chic and the Forouzeshes initiated an
adversary proceeding against Fiene in the bankruptcy
court, seeking to prevent Fiene from discharging the
arbitration award in bankruptcy.  The bankruptcy court
granted summary judgment in Chic's and the Forouzeshes'
favor, finding that Fiene was estopped from arguing
against the arbitrator's conclusion that he defrauded the
Forouzeshes and Chic; the bankruptcy court therefore held
that Fiene's debt to Chic and the Forouzeshes could not
be discharged.  Fiene now appeals the bankruptcy court's
judgment.  For the following reasons, the judgment of the
bankruptcy court is AFFIRMED.

## I. BACKGROUND

In 2003, the Forouzeshes approached Fiene with a
proposal to develop a line of women's clothing called
"Yank" for Cyrus Forouzesh's clothing company, Selection
Chic.  The Forouzeshes did so with the intention that
Danny Forouzesh would one day take over running the Yank
line.  In April 2004, the Forouzeshes hired Fiene to
develop the line for Chic; in September, they brought
Gregg Walker in as an investor in the line.  As a

condition of his investment, however, Walker insisted
that a new company be formed as a vehicle for developing
the Yank brand.  Fiene and Walker together formed G-
Squared Fashions, Inc. ("G2"), a company into which the
Forouzeshes and Chic made a capital investment valued at
$600,000.  The Forouzeshes' and Chic's investment was
memorialized in an "Agreement between Capital Investor
and New Company" ("Agreement"), drafted by Walker and
signed by the Forouzeshes, Fiene, and Walker.

     The Agreement set forth seven provisions benefitting
G2, to which the Forouzeshes and Chic (together, as the
"Capital Investor") agreed, and in exchange for which G2
was to:

     Issue stocks in the name of Danny Foruzesh in
     [G2] based on the formula below.  (This formula
     represents examples so if amount sold to
     investor's [sic] changes, this formula will be
     used to finalize the final percentage to Danny
     Foruzesh).

          20% OF THE COMPANY SOLD TO INVESTORS

     Amount raised $2,000,000 plus $600,000(Capital
     Investor)= 4.62% + 4% = 8.62%

Amount raised $3,500,000 plus $600,000(Capital
Investor) = 2.93% + 4% = 6.93%

(R. at 88) (errors in original).

The Agreement contained a choice of law clause
(California) and an arbitration clause, and the parties
executed it on October 7, 2004.  (R. at 89.)

As it turned out, G2 never issued any shares to Danny
Forouzesh.  In late 2005, the Forouzeshs and Chic sued
G2, Walker, and Fiene in the California Superior Court
for the County of Los Angeles, alleging – among other
things – that G2, Walker, and Fiene never intended to
issue shares in G2 to Danny Forouzesh, and thereby
defrauded the Forouzeshs and Chic by gulling them into
entering an agreement to purchase the shares in exchange
for their capital contribution.  (See R. at 79-80.)
Pursuant to the Agreement's arbitration clause, G2,
Fiene, and Walker compelled Chic and the Forouzeshs to
arbitrate all of their claims.

The arbitration proceeded in two sessions, the first
taking place between April 27 and April 30, 2008 and May
1 and 2, 2008, and the second taking place between July
27 and 29, 2009.  Between the two sessions, Fiene filed
for bankruptcy protection, and after the bankruptcy court

granted Chic and the Forouzeshes relief from the automatic stay (see R. at 92), the arbitration proceeded with Fiene – now unable to pay for counsel – representing himself.

The arbitrator issued a decision on October 15, 2009, concluding that G2, Fiene, and Walker violated California securities law by offering to issue shares to Danny Forouzesh, entitling Chic and the Forouzeshes to "return of the value of consideration given for the shares," i.e., $600,000. (R. at 139.)  The arbitrator also found G2, Fiene, and Walker breached an oral agreement with the Forouzeshes as to an obligation to employ Danny Forouzesh, and to repay the Forouzeshes and Chic for certain advances.  (See R. at 140-41.)  Most importantly, after noting that "[w]ith the bankruptcy of the Respondent/Debtors [i.e., Fiene, Walker, and G2], this case is all about fraud," the arbitrator set forth evidence supporting his conclusion that Fiene, Walker, and G2 defrauded the Forouzeshes and Chic by taking their capital without any intention of ever providing the promised equity in G2.  (See R. at 141-44.)  The arbitrator then awarded Chic and the Forouzeshes $810,000 for the rescission of the stock agreement ($600,000 in capital contributions, plus interest at 7% from October 7, 2004, to the time of the judgment) and an additional $143,418.14 for other damages related to G2's, Fiene's,

and Walker's breach of contract.  Finally, the arbitrator awarded $3,533.75 in arbitration fees and expenses, for a total of $956,951.89 in damages, for which Fiene, Walker, and G2 were responsible jointly and severally.  (R. at 149-50.)

On June 11, 2010, the superior court reduced the arbitrator's award to a judgment of $956,951.89, plus $36,169.76 in costs, pre-judgment interest of $16,339.94, and post-judgment interest accruing at 10% per year.  (R. at 168-69.)  The Forouzeshes and Chic then filed an adversary action in Fiene's bankruptcy proceedings; in it, they claimed alternately that the judgment debt Fiene owed them was non-dischargeable because of his fraud, see 11 U.S.C. § 523(a)(2)(A), his causation of a willful and malicious injury, see 11 U.S.C. § 523(a)(6), and his securities law violation, see 11 U.S.C. § 523(a)(19). (See R. at 5-19.)  They aimed to prevent Fiene from discharging at least $615,000 of the debt, plus pre-judgment interest, punitive damages, attorneys' fees, and costs.  (See R. at 18-19.)

The Forouzeshes and Chic then moved for summary judgment on their claims, arguing the arbitration award, reduced to judgment, was outcome determinative:  the arbitrator's determination that Fiene defrauded the Forouzeshes and Chic, and violated California securities

law, would preclude Fiene from arguing otherwise in
defending the adversary proceeding.  (See R. 33-46.)  The
bankruptcy court agreed, and ordered that the Forouzeshes
and Chic recover from Fiene a non-dischargeable money
judgment of $838,652.05, representing "the principal
amount of $600,000, plus interest of $238,652.05."  (See
R. at 595-96.)

Fiene appealed the bankruptcy court's decision to
this Court, arguing that the bankruptcy court erred in
giving preclusive effect to the arbitration award entered
against him.  Chic and the Forouzeshes filed no cross-
appeal (as to, e.g., the amount of the award), though
they did contest Fiene's appeal, arguing that the
bankruptcy court granted summary judgment correctly – the
issue to which this Court now turns.

## II. LEGAL STANDARD

The standard of review that applies here is a
familiar one:  the decision of the bankruptcy court to
grant summary judgment is reviewed de novo.  In re
Bakersfield Westar Ambulance, Inc., 123 F.3d 1243, 1245
(9th Cir. 1997); see In Re Adv. Packaging & Prods. Co.,
426 B.R. 806, 816 (C.D. Cal. 2010) ("When reviewing a
decision of the bankruptcy court, a district court
functions as an appellate court and applies the standards
of review generally applied in federal courts of

appeal.").  In conducting its review, the Court views the
evidence in the light most favorable to the non-moving
party (here, Fiene), granting him the benefit of
reasonable inferences that can be drawn from the facts.
In re SNTL Corp., 571 F.3d 826, 834 (9th Cir. 2009).

Likewise, the Court conducts a de novo review of the
bankruptcy court's determination that issue preclusion is
available; that is, that findings in one proceeding may
preclude litigation of the same issues in another.  Dias
v. Elique, 436 F.3d 1125, 1128 (9th Cir. 2006); In re
Lopez, 367 B.R. 99, 103 (B.A.P. 9th Cir. 2007).  Once it
is determined that issue preclusion is available,
however, the bankruptcy court's decision to apply it is
discretionary, and will be reversed only if the
bankruptcy court somehow abused its discretion.  Dias,
436 F.3d at 1128 (citing Miller v. Cnty. of Santa Cruz,
39 F.3d 1030, 1032 (9th Cir. 1994)).

## III. DISCUSSION

Whether the bankruptcy court granted summary judgment
correctly in favor of the Forouzeshes and Chic turns on
two questions:  (A) whether the arbitration award (as
confirmed by the superior court) can be considered
preclusive as to its findings – i.e., that Fiene
defrauded Chic and the Forouzeshes – and; (B) assuming
the award is preclusive as to its findings, whether those

findings satisfy the non-dischargeability requirements
set forth in 11 U.S.C. § 523.

In this case, Fiene's principal arguments are first,
that the arbitration was unsound procedurally – its
results were therefore undeserving of the preclusive
effect the bankruptcy court gave them – and second, that
even if the bankruptcy court gave the arbitration award
preclusive effect, the elements necessary to prove non-
dischargeability under 11 U.S.C. § 523 are absent from
the arbitrator's findings.

## A.   Arbitration and Preclusion

Having been adjudicated under California law, the
arbitration award in this case, confirmed by the superior
court, has the same preclusive effect in this Court (and
in the bankruptcy court) as it would in a California
state court.  See In re Bybee, 945 F.2d 309, 316 (9th
Cir. 1991) ("the res judicata effect of a previous state
court judgment is determined by the law of the rendering
court."); see, e.g., In re Khaligh, 338 B.R. 817, 824
(B.A.P. 9th Cir. 2006) (noting that a federal court must
give the same preclusive effect to a state court judgment
as would the courts of that state); see generally 28
U.S.C. § 1738 (requiring federal courts to accord "the
same full faith and credit" to state judicial proceedings
as those proceedings would have under the law of the

1  state in which they occurred).   In California, the
2  determination of an issue in one forum precludes its
3  litigation in another if:  (1) the issue sought to be
4  precluded from litigation is identical to the issue
5  decided previously; (2) the issue was actually litigated
6  in the earlier proceeding (i.e., the issue cannot have
7  been decided en passant); (3) resolution of the issue
8  must have been necessary to deciding the earlier
9  proceeding; (4) the decision in the earlier proceeding
10 must have been a final one, on the merits; and (5) "the
11 party against whom preclusion is sought must be the same
12 as, or in privity with, the party to the former
13 proceeding."  Hernandez v. City of Pomona, 46 Cal. 4th
14 501, 513 (2009).  Fiene posits a sixth criterion,
15 requiring courts to apply preclusion "only where such
16 application comports with fairness and sound public
17 policy."  Vandenberg v. Super. Ct., 21 Cal. 4th 815, 835
18 (1999).

19

20     Fiene then argues, unconvincingly, that the
21 bankruptcy court erred in giving preclusive effect to the
22 arbitration award because the arbitration was unfair to
23 Fiene, who lacked counsel and, being unable to continue
24 paying his share of the arbitration fees, could not
25 assert a compulsory cross-claim.  In other words, Fiene
26 argues that the arbitration violated the sixth criterion
27 for determining whether issue preclusion is available.

28

1    Further, Fiene argues, the arbitration lacked

2  evidentiary rules sufficient for the bankruptcy court to

3  be able to determine, with certainty, that the same

4  issues were litigated in the arbitration.   In other

5  words, Fiene argues the bankruptcy court could not

6  conclude at summary judgment that the arbitration award

7  met the first criterion for issue preclusion set forth

8  above.

9

10    **1.   Was the Arbitration Fair?**

11    In assessing whether an underlying arbitration was

12  fair enough to be given preclusive effect in later

13  litigation, courts look to whether the arbitration

14  "followed basic elements of adjudicatory procedure."  <u>In</u>

15  <u>re Khaligh</u>, 338 B.R. at 828 (citing <u>Kelly v. Vons Cos.</u>,

16  67 Cal. App. 4th 1329, 1336-37 (1998)); <u>see, e.g.</u>, <u>People</u>

17  <u>v. Sims</u>, 32 Cal. 3d 468, 479-82 (1982) (setting forth

18  facts indicating that an underlying administrative

19  proceeding was judicial in nature for the purpose of

20  preclusion) <u>superseded in irrelevant part by statute</u>,

21  1984 Cal. Stat. c. 1448 § 6 <u>as recognized in</u> <u>People v.</u>

22  <u>Preston</u>, 43 Cal. App. 4th 450 (1996); <u>cf.</u> <u>United States</u>

23  <u>v. Utah Constr. & Mining Co.</u>, 384 U.S. 394, 421-22 (1966)

24  ("When an administrative agency is acting in a judicial

25  capacity and resolves disputed issues of fact properly

26  before it which the parties have had an adequate

27

28

1  opportunity to litigate, the courts have not hesitated to
2  apply res judicata to enforce repose.").

3

4      Fiene contends first that "the arbitration
5  proceedings in this case do not possess the requisite
6  indicia that they were sufficiently adjudicatory"
7  (Appellant's Opening Br. (Doc. No. 19) at 13), because he
8  "was not represented by counsel and presented no
9  witnesses" (id.).  This argument fails; a judicial
10 proceeding – such as the one in which Fiene would have
11 remained had he not compelled Chic and the Forouzeshes to
12 arbitrate – remains adjudicative regardless whether the
13 participants (1) are represented, or (2) put on
14 witnesses.  If instead Fiene means to argue that an
15 adjudicatory proceeding is unfair as a matter of public
16 policy when a party lacks counsel or declines to put on
17 witnesses, his argument is still implausible.  There is
18 no general guarantee of counsel (as opposed to a right to
19 hire one's own counsel) in civil cases in either the
20 federal or California state courts; civil proceedings in
21 either forum are not thereby rendered unfair as a matter
22 of public policy.  See Lassiter v. Dep't of Soc. Servs.,
23 452 U.S. 18, 25-27 (1981) (holding that there is
24 generally no constitutional right to appointment of
25 counsel in civil cases); Cnty. of Santa Clara v. Super.
26 Ct., 2 Cal. App. 4th 1686, 1691 n.3 (1992) (declining to
27 find civil litigants have a general right to appointed

28

1  counsel).  Likewise, when a party is entitled to call
2  witnesses – but declines to do so – he can hardly fault
3  the forum in which he is litigating for his own failure
4  to make use of its procedures.  "It is the opportunity to
5  litigate that is important in these cases, not whether
6  the litigant availed him or herself of the opportunity."
7  Rymer v. Hagler, 211 Cal. App. 3d 1171, 1179 (1989).

8

9      Fiene then argues that the arbitrator's analysis was
10  truncated due to Fiene's inability to pay the fees for
11  arbitration, and that "is reason alone to find that the
12  arbitration was not sufficiently adjudicatory."
13  (Appellant's Opening Br. at 14.)  Moreover, Fiene adds,
14  he was unable to present a cross-claim because he could
15  not pay the arbitrator to decide it.  (Id.)

16

17      As to the argument that the arbitrator's truncated
18  analysis is a sufficient reason to disregard the
19  arbitration award's preclusive value, the Court notes
20  that the arbitrator nowhere stated that he performed a
21  truncated analysis.  Instead, he wrote that he read
22  opening and closing briefs, took testimony from "numerous
23  witnesses," and received declarations, affidavits, and
24  "almost 300" other documents in evidence.  (R. at 133.)
25  He then stated not that his analysis was curtailed due to
26  a lack of funding, but instead that his "decision [would]
27  be somewhat abbreviated."  The length of a decision,
28

however, is no basis by which to measure the value of its content – or the analysis involved in authoring it.  See, e.g., Denny v. Radar Indus., Inc., 184 N.W.2d 289, 290 (Mich. Ct. App. 1970).[1]

Nor does the Court find unfair the arbitrator's refusal to hear Fiene's cross-claim.  True, the California Code of Civil Procedure § 426.30 requires a defendant to file a cross-complaint against a plaintiff with its answer, or else forgo evermore any related claims the defendant may have against that plaintiff. Perhaps the arbitrator's refusal to hear Fiene's cross-claim would thus prohibit him, unfortunately, from being able to later file suit against Chic or the Forouzeshes in state court on a related claim.  It was Fiene, Walker, and G2, however, who demanded arbitration in a forum where they would be forced to pay to play – and threatened Chic, the Forouzeshes, and their counsel with sanctions unless they acquiesced.  (See R. at 252-60.)

_____

[1] As evidence of the arbitrator's alleged analysis-on-the-cheap, Fiene points to the fact the arbitrator awarded Chic and the Forouzeshes $600,000 "based on the value of the shares" G2, Fiene, and Walker agreed to, but did not, issue.  This is absurd, Fiene argues, because the arbitrator later said the shares were worthless. (Appellant's Opening Br. at 14.)  Fiene's argument strains credulity.  At the time Chic and the Forouzeshes paid $600,000 for the shares, the shares were worth $600,000; at the time of the arbitration, when G2 was bankrupt, the shares were worth nothing.  Those two concepts are not difficult to reconcile, and certainly not indicative of slipshod analysis on the arbitrator's part.

1    Fiene cannot now argue that his litigation strategy
2    turned out to be cost-prohibitive in the forum he chose.
3    See EZ Loader Boat Trailers, Inc. v. Cox Trailers, Inc.,
4    746 F.2d 375, 377 (7th Cir. 1984) ("The fact that [the
5    appellant] chose the forum in which to proceed weighs in
6    favor of collateral application of that forum's findings,
7    and of discounting [the appellant's] complaints of
8    procedural inadequacies."); Zazueta v. Cnty of San
9    Benito, 38 Cal. App. 4th 106, 111 (1995) (expressing the
10   same sentiment).

11

12       Moreover, assuming Fiene had been able to arbitrate
13   his cross-claim, and prevailed, that outcome might have
14   effected the allocation of a money judgment among the
15   parties – but it would not have affected the arbitrator's
16   finding that Fiene was liable for, among other things,
17   defrauding Chic and the Forouzeshes.  Thus Fiene's
18   inability to bring a cross-claim is irrelevant to the
19   paramount question here, i.e., whether the arbitration
20   award could have precluded the litigation before the
21   bankruptcy court of issues the arbitrator already
22   decided.

23

24       In sum, the Court finds nothing unfair about the
25   arbitration that Fiene elected to pursue – though he
26   ultimately did so without counsel, and suffered a
27   significant adverse judgment.  The Court thus turns to
28

1   Fiene's argument that "a judgment stemming from an
2   arbitration proceeding not governed by the rules of
3   evidence cannot be afforded collateral estoppel effect,"
4   because "absent adherence to evidentiary rules, no
5   identity of issues exists between those heard by the
6   other tribunal and those before the bankruptcy court."
7   (Appellant's Opening Br. at 14-15.)

8

9        **2.   Were the Issues Arbitrated Identical to Those**
10            **Before the Bankruptcy Court?**

11       Citing a decades-old decision of the bankruptcy
12   court, Fiene argues that if the arbitrator's findings
13   "were not based upon evidence introduced pursuant to
14   rules of evidence substantially identical to the Federal
15   Rules of Evidence, the doctrine of collateral estoppel
16   will not apply to such findings."  In re Barigian, 72
17   B.R. 407, 410 (Bankr. C.D. Cal. 1987).  Fiene points out
18   that the same bankruptcy judge who authored the opinion
19   in Barigian appears to have departed from that holding in
20   giving preclusive effect to the arbitration award in this
21   case.

22

23       The bankruptcy court is, of course, not bound by its
24   own previous judgments.  Cf. Camreta v. Greene, 131 S.
25   Ct. 2020, 2033 n.7 (2011) ("'A decision of a federal
26   district court judge is not binding precedent . . . upon
27   the same judge in a different case.'" (quoting 18 J.
28

1  Moore, et al., Moore's Federal Practice § 134.02[1][d]

2  (3d ed. 2011)).  This Court thus does not attribute the

3  bankruptcy court's departure from its holding in <u>Barigian</u>

4  to any inconsistency, but instead to its considered

5  response – some time in the 25 years that elapsed since

6  it issued its opinion in that case – of the measured

7  criticisms of its prior approach.  <u>See, e.g.</u>, <u>In re</u>

8  <u>Clayton</u>, 168 B.R. 700, 705 (Bankr. N.D. Cal. 1994)

9  (noting that the <u>Barigian</u> rule would also deny preclusive

10  effect to the judgments of many state courts).

11

12      Suffice it to say that this Court declines to apply a

13  rule that the bankruptcy court itself eschewed.  Courts

14  give preclusive effect regularly to judgments issued by

15  bodies that do not adhere to strict evidentiary rules, as

16  long as whatever rules applied allowed the parties an

17  adequate opportunity to litigate their claims.  <u>Murray v.</u>

18  <u>Alaska Airlines, Inc.</u>, 50 Cal. 4th 860, 869-73 (2010);

19  <u>see, e.g.</u>, <u>Sims</u>, 32 Cal. 3d at 480-81 ("Collateral

20  estoppel effect is given to final decisions of

21  constitutional agencies such as the Workers' Compensation

22  Appeals Board . . . and the Public Utilities Commission

23  even though proceedings before these agencies are not

24  conducted according to judicial rules of evidence.").

25

26

27

28

17

Here, the arbitrator conducted proceedings according to the American Arbitration Association Commercial Arbitration Rules, one of which governs the presentation of evidence. That rule – Rule 31 – allows the parties to offer evidence, the admissibility, relevance, and materiality of which are determined by the arbitrator. While Rule 31 is more basic than the Federal Rules of Evidence, it is not so inadequate as to undermine all of the many proceedings that parties agree, for efficiency's sake, to arbitrate under the Commercial Arbitration Rules.

Accordingly, the Court concludes the difference in evidentiary rules between the arbitral forum and the bankruptcy court is not, itself, sufficient to undermine the preclusive effect of the arbitration award in these bankruptcy proceedings. Nor, as the Court noted above, was the arbitration otherwise unfair to Fiene. Further, there is no dispute as to whether any of the other criteria necessary to give the arbitration award preclusive effect are satisfied. The Court finds that they are, that issue preclusion is therefore available in this case, and that the bankruptcy court did not abuse its discretion in applying it. The Court thus turns to the question whether the arbitration award, when given

1  preclusive effect, establishes the requisite facts to

2  satisfy 11 U.S.C. § 523's requirements for non-

3  dischargeability.

4

5  **B.  Non-Dischargeability**

6      Fiene's arguments about why the arbitration award

7  fails to satisfy Section 523 are largely quarrels with

8  the arbitrator's conclusions. (See, e.g., Appellant's

9  Opening Br. at 20 ("An error also exists with respect to

10 the arbitrator's interpretation of the condition

11 precedent required to trigger the issuance of G2

12 shares.").)  This Court is not the proper forum in which

13 to raise such disputes.  See Coutee v. Barington Capital

14 Group, L.P., 336 F.3d 1128, 1132-33 & n.4 (9th Cir. 2003)

15 (setting forth the "limited and highly deferential"

16 standard of review of an arbitrator's decision, which

17 does not include review for simple legal or factual

18 error); Vandenberg, 21 Cal. 4th at 830-32.  Instead of

19 indulging such arguments, the Court conducts its de novo

20 review by recounting precisely what it was the arbitrator

21 found, and then asking whether his findings satisfy

22 Section 523's criteria.

23

24     The arbitrator's final award, as reduced to judgment

25 by the superior court, was that G2, Fiene, and Walker

26 violated the California Corporations Code because they

27 sold (though never delivered) shares of G2 stock to Danny

28

19

Forouzesh without qualifying the offer of shares with the
California Commissioner of Corporations.  <u>See</u> Cal. Corp.
Code § 25110.  The judgment thus declared Chic and the
Forouzeshes "entitled to the value of consideration given
for the shares which were to have been issued," <u>i.e.</u>,
$600,000.  (R. at 164.)

     The next portion of the judgment is the most crucial:
the arbitrator found Fiene, Walker, and G2 defrauded Chic
and the Forouzeshes; that is Fiene, Walker, and G2 made
"a material misrepresentation of fact with the intent to
deceive so as to cause the other person to reasonably
rely on the representation with resulting damage because
of that reliance."  (R. at 165.)  The arbitrator also
noted specifically that "[t]here is also the concept of
promissory fraud:  a promise made without the intent to
carry through on the promise."  (<u>Id.</u>)

     Noting the import of a fraud finding – the arbitrator
was "acutely aware" of the effect of such a finding on
the dischargeability of the award – the arbitrator found
Fiene, et al., denied the Forouzeshes and Chic "an equity
interest in [G2]," as well as Danny Forouzesh's "salary,
benefits, and credit advances . . . ."  (<u>Id.</u>)  He then
found that Fiene, Walker, and G2 "never intended to
compensate" Chic and the Forouzeshes as agreed.  (R. at
166.)  In other words, the arbitrator found that the

1   entirety of the agreement between Fiene, Walker, and G2
2   on one hand, and Chic and the Forouzeshes on the other,
3   was induced by a false promise.  See generally Lazar v.
4   Super. Ct., 12 Cal. 4th 631, 638 (1996) (describing the
5   tort of promissory fraud).  The arbitrator then made
6   findings to support his conclusion, including his finding
7   specifically that "Fiene never intended to compensate"
8   Chic and the Forouzeshes.  (R. at 167.)  He went on to
9   note that Chic and the Forouzeshes were justified in
10  relying on the promises of Fiene, Walker, and G2, and
11  attributed to Fiene a primary role in the fraud, writing
12  that he "enlisted the help of a financier [Walker] who
13  saw an opportunity to capitalize on a vulnerable
14  businessman [Cyrus Forouzesh]."  (R. at 168.)  In
15  conclusion, the arbitrator wrote, G2, Walker, and Fiene
16  committed fraud on each of the Forouzeshes and Chic.
17  (Id.)

18

19      The superior court, when it reduced the arbitrator's
20  decision to a judgment, set forth a lump sum of damages:
21  $956,951.89, plus costs and pre-judgment interest.  (Id.)
22  The arbitrator, as noted above, spread the award among
23  various sources of the damage Chic and the Forouzeshes
24  suffered.

25

26

27

28

1    The arbitrator's breakdown of damages gives rise to
2 Fiene's argument that it is hopeless to attempt the task
3 of labeling any portion of the award as "for fraud" or
4 "for securities violations," and therefore impossible for
5 a court to conclude that the award is non-dischargeable
6 under either 11 U.S.C. § 523(a)(2)(A) or 11 U.S.C. §
7 523(a)(19).  The Court turns to this argument before
8 addressing whether the arbitration award otherwise
9 contained the necessary facts to support the conclusion
10 that the judgment against Fiene is non-dischargeable.

11

12    Fiene contends that "[n]owhere does the [a]rbitration
13 [a]ward articulate that any portion of the damage award
14 of $600,000 is attributable to fraud."  (Appellant's
15 Opening Br. at 18.)  Not so.  The arbitrator found that
16 the whole of the award – beyond the $600,000 amount – was
17 attributable to fraud, which is why the superior court
18 reduced the entire arbitration award to a single judgment
19 amount of $956,951.89, and wrote explicitly that "[t]he
20 damages awarded, as set forth above, are based upon a
21 finding of fraud, and violation of the California
22 Security Act."  (R. at 163.)[2]

23

24

25    [2] Given that the whole of the award can be attributed
26 to fraud, if the bankruptcy court erred, it was in
   allowing Fiene to discharge any portion of the award at
27 all.  (See R. at 596, 615-18.)  Chic and the Forouzeshes,
   however, did not appeal the size of the award the
28 bankruptcy court granted them.

22

1     Fiene's argument seems to be driven by the
2  misconception that a plaintiff cannot recover a single
3  damage award for both a tort and a concurrent breach of
4  contract.  That is not so.  See Lazar, 12 Cal. 4th at 638
5  (noting that in cases of promissory fraud where an
6  enforceable contract exists, a plaintiff has a cause of
7  action in tort, and possibly also in contract, subject to
8  the "rule against double recovery of tort and contract
9  compensatory damages").  Here, Fiene and company
10  simultaneously violated California securities law (by
11  making an unqualified offering), breached a contract (by
12  failing to give Danny Forouzesh the shares they owed
13  him), and committed promissory fraud (by never intending
14  to issue the shares in the first place).  The damages for
15  all three claims, however, could be (though are not
16  necessarily) the same:  the $600,000 in capital Chic and
17  the Forouzeshes gave G2, Fiene, and Walker in exchange
18  for the shares.
19
20     Having resolved that argument, the Court now may
21  turn, finally, to the question whether the arbitration
22  award adequately supports the bankruptcy court's judgment
23  that Fiene's judgment debt to Chic and the Forouzeshes is
24  at least partially non-dischargeable.  The Court finds
25  that it does.  While Chic and the Forouzeshes advanced
26  three theories under which the arbitration award against
27  Fiene is non-dischargeable, given the arbitrator's
28

finding of over-arching promissory fraud, fraud under 11
U.S.C. § 523(a)(2)(A) is enough of a reason to render the
debt non-dischargeable.[3]

     To establish that a debt is non-dischargeable under
Section 523(a)(2)(A), a creditor must show:  (1) that the
debtor made false representations; (2) and knew they were
false when he made them; (3) but nevertheless did so,
with the intention of deceiving the creditor; who (4)
relied on the debtor's representations; and (5) thereby
suffered damages.  In re Kirsh, 973 F.2d 1454, 1457 (9th
Cir. 1992).  Here, the arbitrator found that Fiene
entered an agreement with the Forouzeshes and Chic, but
never intended to compensate them for their capital
contributions (as evidenced by his failure to put the
contributions on G2's books); that Chic and the
Forouzeshes relied reasonably on Fiene's representations
regarding their capital contribution and employment of
Danny Forouzesh; and that Chic and the Forouzeshes were
thereby damaged.  (See R. at 166-68.)  Thus, once the
arbitration award is given preclusive effect, which it
should be, Chic and the Forouzeshes demonstrate

---

     [3] The arbitrator's finding that promissory fraud
underlay the entirety of Fiene's dealings with Chic and
the Forouzeshes blunts Fiene's argument (based on non-
binding authority) that summary judgment is improper when
some facts satisfy the requirements for non-
dischargeability and others do not.  See In re
Bogdanovich, 292 F.3d 104, 111-12 (2d Cir. 2002).

1 | successfully that Fiene's judgment debt is non-
2 | dischargeable under 11 U.S.C. § 523(a)(2)(A).

3 |

4 |     All that remains, then, is the parties' argument
5 | regarding the proper rates of pre- and post-judgment
6 | interest to be applied to the award the Forouzeshes and
7 | Chic secured from the bankruptcy court.  Fiene contends
8 | the proper rates are those prescribed by statute for
9 | judgments issued by federal courts (see Appellant's
10 | Opening Br. at 27-28); the Forouzeshes and Chic argue
11 | they are those set by the superior court and California
12 | law, and applied by the bankruptcy court (see Appellee's
13 | Opening Br. (Doc. No. 21) at 29-30).  The Court is
14 | puzzled as to why the parties are disputing the
15 | applicable pre- and post-judgment interest rates, when
16 | the bankruptcy court's judgment mentions neither.  (See
17 | R. at 596.)  The bankruptcy court "awarded a non-
18 | dischargeable money judgment" of "the total sum of
19 | $838,652.05," "comprised of the principal amount of
20 | $600,000, plus interest of $238,652.05 . . . from October
21 | 7, 2004 through and including June 11, 2010."  (Id.)
22 | June 11, 2010 was the date on which the superior court
23 | entered its final judgment on the arbitration award in
24 | this matter.  (See R. at 169.)

25 |
26 |
27 |
28 |

1    Consequently, the interest of which the bankruptcy
2  court spoke ran before the superior court's judgment – it
3  was not pre-judgment interest set by, or running before,
4  the bankruptcy court's judgment.  It was therefore set
5  properly by the superior court.  The bankruptcy court
6  prescribed no rate of post-judgment interest; however,
7  Chic and the Forouzeshes are entitled to receive post-
8  judgment interest at the rate prescribed by federal law.
9  See Fed R. Bankr. P. 7058 (applying Federal Rule of Civil
10  Procedure 58 – on the issuance of judgments – to
11  adversary proceedings in bankruptcy courts); 28 U.S.C. §
12  1961(a) (allowing post-judgment interest on civil money
13  judgments).
14
15                    **IV. CONCLUSION**
16    The bankruptcy court did not err in determining that
17  issue preclusion was available under the arbitration
18  award Chic and the Forouzeshes secured against Fiene, nor
19  did it abuse its discretion by then giving the award
20  precisely that preclusive effect in these proceedings.
21  Having done so, the bankruptcy court then granted Chic
22  and the Forouzeshes summary judgment properly.  The Court
23  therefore AFFIRMS the judgment of the bankruptcy court.
24
25
26
27  Dated: September 5, 2012    _____
                                VIRGINIA A. PHILLIPS
28                              United States District Judge

26